FILED & ENTERED

FEB 10 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY kaaumoan DEPUTY CLERK

# NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>JAMES ARTHUR KRAGE<br><br><br>Debtor(s). | CHAPTER 13<br><br>Case No.: 2:12-bk-17916-WB<br>Adv No:  2:14-ap-01687-WB |
| JAMES ARTHUR KRAGE<br><br>Plaintiff(s),<br>  v.<br><br>U.S. BANK NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CERTIFICATEHOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I LLC, ASSET-BACKED CERTIFICATES, SERIES 2005-HE9, ITS SUCCESSORS AND/OR ASSIGNS; EMC MORTGAGE CORPORATION; BEAR STEARNS ASSET BACKED SECURITIES I LLC; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS AKA MERS; AND DOES 1-100 INCLUSIVE,<br><br>Defendant(s). | **MEMORANDUM OF DECISION ON MOTION TO DECLARE PLAINTIFF JAMES A. KRAGE A VEXATIOUS LITIGANT FOR ORDER TO FURNISH SECURITY AND FOR PREFILING ORDER**<br><br>Date:       January 20, 2015<br>Time:      2:00 p.m.<br>Courtroom: 1375 |

Defendants JPMorgan Chase Bank, N.A.'s ("Chase"), successor servicer to EMC Mortgage LLC, f.k.a. EMC Mortgage Corporation and Bear Stearns Asset Backed Securities I LLC ("Bear Stearns") (collectively, "Defendants") motion to declare plaintiff James Arthur Krage ("Krage" or "Plaintiff") a vexatious litigant and for an order to furnish security and a prefiling order ("Motion"), came on for hearing before this court on January 20, 2015 at 2:00 p.m.  Appearances were made as noted on the record.  Having read the Defendants' Motion, Plaintiff's opposition thereto, and the Defendants' reply, and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court grants the relief requested in the Motion based upon the following findings of fact and conclusions of law pursuant to F.R.Civ.P. 52(a)(1)[1], as incorporated into FRPB 7052 and applied to contested matters by FRBP 9014(c).

## I.      STATEMENT OF FACTS

### A.  Krage's First Bankruptcy Case

On August 8, 2008, Krage filed a voluntary petition under chapter 13 in Case No. 2:08-bk-22336-AA in the United States Bankruptcy Court, Central District of California, Los Angeles Division.  On December 19, 2008, the court entered an order dismissing the case pursuant to the chapter 13 confirmation hearing.  The case was closed on October 19, 2010.

### B.  Krage's Second Bankruptcy Case

While his first case was pending, Krage filed a second voluntary petition under chapter 13 in Case No. 2:08-32959-AA in the United States Bankruptcy Court, Central District of California, Los Angeles Division.  On November 6, 2009, an order was entered dismissing the case for failure to make required plan payments.  The case was closed on February 12, 2010.

---

[1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P"). "L.R." references are to the Local Rules of the United States District Court for the Central District of California. "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California.

1

2      C.  Krage's Third Bankruptcy Case

3            While his second case was pending, Krage filed a third voluntary chapter 13 petition in

4      Case No. 2:09-bk-46466-ER in the United States Bankruptcy Court, Central District of

5      California, Los Angeles Division.  On February 1, 2011, the court entered an order dismissing

6      the case pursuant to the chapter 13 confirmation hearing.  The case was closed on October 18,

7      2011.

8      D.  Krage's Fourth Bankruptcy Case

9            Krage filed this fourth voluntary petition under chapter 13 in Case No. 2:12-bk-17916-

10     WB, the current underlying bankruptcy case, on March 5, 2012 in the United States Bankruptcy

11     Court, Central District of California, Los Angeles Division.

12           During the two years and ten months this case has been pending, Krage has commenced

13     five adversary proceedings—three of which take issue with promissory note ownership and lien

14     validity and challenge the foreclosure sale related to residential real property located in

15     Bellflower California, and allege California real property and tort claims.  In 2011, Krage, along

16     with the owner of the property, Douglas Matthews, also had filed litigation in California Superior

17     Court challenging the note, liens and foreclosure of the same property.

18           The relevant facts alleged in the state court case and in each of the three adversary

19     proceedings at issue are as follows:

20           In April 2005, non-party Douglas Matthews ("Matthews") obtained a loan for

21     $276,500.00 (the "Loan") from non-party RESMAE Mortgage Corporation ("RESMAE") by

22     executing a promissory note ("Note") and a deed of trust ("Deed of Trust"), secured by the

23     subject real property located at 9735 Harvard Avenue, Bellflower, California 90706 (the

24     "Property").  On April 27, 2005, the Deed of Trust was recorded in the Los Angeles County

25     Recorder's Office.  Mortgage Electronic Systems ("MERS") was identified under the Deed of

26     Trust as the beneficiary and nominee of lender and lender's successors and/or assigns.

27

28

On March 3, 2006, MERS, as the beneficiary under the Deed of Trust, executed a "Substitution of Trustee," naming Cal-Western Reconveyance Corporation ("Cal-Western") as trustee and Chase began servicing the Loan.

On October 23, 2009, MERS assigned its beneficial interest in the Deed of Trust to Bank of America, N.A. ("Bank of America"). In the event of default, the Deed of Trust authorized the lender to direct the trustee to commence foreclosure proceedings in accordance with California law.

On May 27, 2010, Cal-Western recorded a notice of default on the Loan. At that time, Matthews was almost $128,000.00 in arrears. On September 2, 2010, after Matthews failed to cure the default, Cal-Western recorded a Notice of Trustee's Sale, scheduling the foreclosure sale for September 22, 2010 (the "Foreclosure Sale"). Matthews failed to reinstate the Loan and, on December 20, 2010, Cal-Western recorded a Trustee's Deed Upon Sale in favor of Bank of America, which had been the winning bidder at the Foreclosure Sale.

Approximately six months prior to the Foreclosure Sale, Krage and Matthews entered into a long-term residential lease agreement allowing Krage to rent one quarter (¼) of the Property's garage for storage of personal belongings and to park his recreational vehicle (the "RV") on the Property's driveway.

As alleged in the complaints, on or about March 22, 2011, Bank of America, through its agents JPMorgan Chase Bank ("Chase"), Nelson Herman Sanchez ("Sanchez") (a Century 21 real estate agent), and David Sarinana ("Sarinana") (a Century 21 real estate broker) perpetrated forcible entry and forcible detainer multiple times against Krage. Specifically, Krage arrived at the Property and was told that Bank of America was taking possession of the Property. Krage was also told that he had to move his RV or it would be towed. Krage asserts he complied and moved the RV across the street.

Later that day, Krage saw that the Bank of America workers were removing items belonging to Krage from the garage of the Property (mostly, Krage's books). Krage asked the workers to return the books to the garage; however, they refused and allowed Krage to only take items that had not been loaded onto their truck yet.

At some point after Krage's books were taken away, Sanchez entered the Property.  In the complaint, Krage does not specify whether Sanchez took any of Krage's belongings.  Instead, the complaint alleges that under the direct supervision of a Sheriff, under instructions from Bank of America and pursuant to Bank of America's recorded trustee's deed upon sale, Sanchez changed the locks at the Property while it was vacant.

Each of the lawsuits alleges a version of the same operative facts on the same or similar theories of recovery against the same parties or successor parties.

a.  State Court Action, Case No. VC058398

Prior to the commencement of the adversary proceedings in Krage's bankruptcy case, on March 28, 2011, Krage and Matthews commenced an action against Bank of America among other defendants in the Los Angeles Superior Court (Case No. VC058398) (the "State Court Action"), styled Douglas M. Matthews v. Nelson Herman Sanchez , et al.  Sanchez and Sarinana were also among the named defendants in the State Court Action.  In their first amended complaint filed on June 20, 2011, Krage and Matthews asserted the following causes of action: (1) quiet title; (2) injunctive relief; (3) improper foreclosure procedure; (4) improper eviction procedure; (5) trespass to commit forcible entry and forcible detainer against owner in possession and tenant in possession with threats, and (6) failure to enforce the law.

On November 16, 2011, the Superior Court entered an order sustaining Bank of America's demurrer to Krage and Matthew's first amended complaint without leave to amend as to all causes of action, except for the sixth cause of action for failure to enforce the law.

b.  First Adversary Proceeding, No. 2:12-ap-02136-WB

On September 6, 2012, Krage and co-plaintiff Matthews filed an 88-page complaint in Adversary No.  2:12-ap-02136-WB, styled Douglas M. Matthews and James A. Krage v. Bank of America, National Association et al.  The complaint asserted claims for (1) declaratory relief, (2) quiet title,  and (3) action to enforce Public Law 111-22.  In the complaint, Krage and Matthews challenged the validity of the foreclosure sale and alleged that the lien created by the 2005 Deed of Trust was invalid and void because it was defective on its face, it had been bifurcated from the Note, defendants had no right, title, or interest in the Deed of Trust, and other

apparent deficiencies.  The defendants named in Krage's complaint included Bank of America as Successor by Merger to Lasalle Bank National Association, as Trustee for Certificate holders of Bear Stearns Asset-Backed Securities I LLC, Asset-Backed Certificates, Series 2005-HE9, Chase and Cal-Western.  In response thereto, defendants Bank of America and Chase moved to dismiss Krage's complaint under Rule 12(b)(6) and the doctrine of res judicata.  Krage opposed the motion.  After a hearing on November 20, 2012, an order was entered dismissing the adversary proceeding with prejudice.

      c.  <u>Second Adversary Proceeding, No. 2:13-ap-02132-WB</u>

      On November 26, 2013, Krage filed a 36-page complaint in Adversary No. 2:13-ap-02132-WB, styled <u>James A. Krage v. Bank of America, National Association et al.</u>, seeking actual and punitive damages from each defendant for wrongful foreclosure and arguing that Krage was protected by the Protecting Tenants at Foreclosure Act ("PTFA"), Pub. L. No. 111-22.  The complaint asserted the following claims for relief concerning the Property: (1) declaratory relief; (2) theft; (3) repetitive harassment; (4) forcible detainer and forcible entry; and (5) enforcement of Public Law 111-22.  The defendants named in this complaint included Bank of America, as trustee, Chase, Sanchez, and Sarinana.  In the complaint, Krage again challenged the validity of the note and lien, the enforcement of the lien and note and alleged that Sanchez (a Century 21 real estate agent) and Sarinana (a Century 21 real estate broker) perpetrated forcible entry and forcible detainer against Krage, based on the improper foreclosure on the property.  In response thereto, defendant Chase and defendants Sanchez and Sarinana filed motions to dismiss Krage's complaint pursuant to Rule 12(b)(6) and the doctrine of res judicata.  On June 2, 2014, the court issued a memorandum of decision and entered an order of the same date granting the motions to dismiss with prejudice.

      On July 9, 2014, Krage filed a motion to reconsider the order granting defendants Chase and Sanchez and Sarinana's motions to dismiss the complaint.  After a hearing, the Court issued a memorandum of decision and order on November 26, 2014 denying the motion to reconsider.

d. <u>Third Adversary Proceeding, No. 2:14-ap-01687-WB</u>

While the motion to reconsider was pending in Adversary No. 2:13-ap-02132-WB, Krage filed this 38-page complaint in Adversary No. 2:14-ap-01687, on October 28, 2014, alleging causes of action for: (1) lack of standing to foreclose; (2) quiet title; (3) slander of title; and (4) declaratory relief. The defendants named in Krage's complaint included U.S. Bank National Association ("U.S. Bank") as Successor Trustee to Bank of America, EMC Mortgage Corporation, Bear Stearns Asset Backed Securities I LLC, and MERS. In response thereto, defendants U.S. Bank (successor to Bank of America) and Chase (successor servicer to EMC Mortgage Corporation) separately filed motions to dismiss Krage's complaint pursuant to Rule 12(b)(6) and the doctrine of res judicata. On December 15, 2015, Chase also filed a Motion to Declare Plaintiff James A. Krage a Vexatious Litigant, for an Order to Furnish Security and for a Prefiling Order. After a hearing on January 20, 2015, the court granted the motions to dismiss the Complaint without leave to amend.

In his Complaint, Krage, who was not the owner of the Property or a borrower, sought "rescission of the stated loan in its entirety" among other relief. In general, the Complaint alleges that: (1) the lien created by the Deed of Trust in 2005 is invalid and void because it is defective on its face; (2) it has been bifurcated from the Note; (3) Defendants have no right, title or interest in the Deed of Trust; and (4) Defendants lack authority to foreclose.

In response to Krage's Complaint, Defendants, along with co-defendants, filed motions seeking to dismiss the Complaint under Rule 12(b)(6) for Krage's failure to state a claim upon which relief can be granted. Additionally, Defendants asserted that the entire action was barred by the doctrines of res judicata and collateral estoppel and that Krage lacked standing to challenge the foreclosure sale because he was not the borrower nor did he have any ownership interest in the Property. Defendants also filed the Motion seeking an order declaring Krage a vexatious litigant.

After a hearing was held on January 20, 2015, the court granted the Defendants' and co-defendants' motions to dismiss the Complaint without leave to amend. The court took Defendants' Motion for an order declaring Krage a vexatious litigant under submission.

## II. DISCUSSION

A.  Standard for Determining Whether to Issue a Pre-filing Order against a Vexatious Litigant

Bankruptcy courts have the power to regulate vexatious litigation pursuant to 11 U.S.C. § 105(a) and 28 U.S.C. § 1651(a).  Bankruptcy Code § 105(a) permits the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code."  Federal courts have discretion to enjoin parties from frivolous litigation under the All-Writs Act, 28 U.S.C. § 1651.  See, e.g., Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1051 (9th Cir. 2007) ("The All Writs Act, 28 U.S.C.  § 1651(a), provides district courts with the inherent power to enter pre-filing orders against vexatious litigants with abusive and lengthy histories of litigation."); De Long v. Hennesey, 912 F.2d 1144, 1146 (9th Cir. 1990) ("We recognize that 'there is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under appropriate circumstances.'") (citing Tripati v. Beaman, 878 F.2d 351, 352 (10th Cir. 1989)).  "Bankruptcy courts, being courts established by Act of Congress, 'have the power to regulate vexatious litigation pursuant to 11 U.S.C. § 105 and 28 U.S.C. § 1651.'" Goodman v. Cal. Portland Cement Co. (In re GTI Capital Holdings, LLC), 420 B.R. 1, 11 (Bankr. D. Ariz. 2009) (quoting Lakusta v. Evans (In re Lakusta), 2007 WL 2255230, * 3 (N.D. Cal. 2007)).

Specifically, the court may enter an order requiring that the litigant obtain the approval of a judge before being allowed to file an action. See Molski, 500 F.3d at 1057 (recognizing that district courts have "inherent power to enter pre-filing orders against vexatious litigants"). Before imposing a pre-filing order against a vexatious litigant in the Ninth Circuit, the court must: (1) give the litigant notice and an opportunity to be heard before the order is entered; (2) compile an adequate record for review; (3) make substantive findings as to the frivolous or harassing nature of the litigant's actions; and (4) draft an order that is "narrowly tailored to closely fit the specific vice encountered." De Long, 912 F.2d at 1147-48.  In Molski, the Ninth Circuit observed that the five factors set forth in Safir v. United States Lines, Inc., 792 F.2d 19 (2d Cir. 1986) provide "a helpful framework for applying the two substantive factors (factors

three and four)" of the De Long test.  Molski, 500 F.3d at 1058.  The Safir factors are: "(1) the litigants history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties."  Safir, 792 F.2d at 24.

1.  Notice and Chance to be Heard before the Order is Entered.

Notice and chance to be heard before the order is entered "is a core requirement of due process."  De Long, 912 F.2d at 1147.  In this case, Krage was properly served with the Defendant's Motion seeking that he be declared a vexatious litigant and requesting that a pre-filing order be entered against him.  Krage had adequate notice of the date, time and place of the hearing.  Krage appeared at the hearing in opposition to the Motion.  Krage had sufficient notice of the relief sought by the Defendants and an adequate opportunity to be heard on the matter. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (Due process is satisfied when notice is "reasonably calculated, under all of the circumstances to apprise interested parties of the pendency of the action and to afford them the opportunity to present their objections.").

2.  There is an Adequate Record for Review Detailing the Harassing Nature of Krage's Litigations.

"An adequate record for review should include a listing of all the cases and motions that [leads] the court to conclude that a vexatious litigant order [is] needed."  De Long, 912 F.2d at 1147.  "At the least, the record needs to show, in some manner, that the litigant's activities were numerous or abusive."  Id. (citations omitted) (emphasis added).  As set forth in detail above, Krage has filed one state court action and three adversary proceedings in this court, challenging the validity of the lien, note and foreclosure sale related to the Property and the ensuing efforts of the owner of the Property subsequent to the foreclosure to obtain possession of the Property.

1    Each of the actions alleges the same core of operative facts and seeks to assert the same primary

2    rights with the same or slightly different theories of relief.  Each of the actions has been

3    dismissed with prejudice.  Accordingly, there is an adequate record for review of the order.

4    　　　3.  <u>Substantive Findings About Frivolous or Harassing Nature of Plaintiff's Litigation</u>.

5    　　　The third <u>De Long</u> factor goes "to the heart of the vexatious litigant analysis." Molski,

6    500 F.3d at 1059.  The court must make "substantive finds as to the frivolous or harassing nature

7    of the litigant's actioins." <u>De Long</u>, 912 F.2d at 1148 (quoting <u>In re Powell</u>, 851 F.2d 427, 431

8    (D.C. Cir. 1988)).  In so doing, the court must evaluate "'both the number and content of the

9    filings as indicia' of the frivolousness of the litigant's claims." <u>Id</u>.  Alternatively, the third <u>De</u>

10   <u>Long</u> factor is satisfied if the evidence supports a finding of harassment.  <u>De Long</u>, 912 F.2d at

11   1148.  With respect to this element, the <u>Safir</u> factors apply.  <u>See</u> <u>Molski</u>, 500 F.3d at 1058.

12   　　　a.  <u>Krage's History of Litigation, Especially Those That Were Vexatious, Harassing,</u>

13   　　　　　<u>or  and Duplicative</u>.

14   　　　Krage's three adversary proceedings filed in this bankruptcy case and the State Court

15   Action involve essentially the same claims against the same defendants or successors thereto.

16   Krage continually challenges the validity of the underlying foreclosure sale, the subsequent

17   eviction proceedings and asserts a claim of forcible detainer and entry.  The court finds that in

18   filing the present action, Krage violated clear principles of res judicata and collateral estoppel.

19   All of the counts in Krage's present action have already been litigated to final judgment.  They

20   also fail to state a claim upon which relief may be granted.  By continuing to file actions that

21   repeat allegations that have already been decided against him, the court finds that Krage has used

22   the state and federal court to harass Defendants.

23   　　　b.  <u>Krage's Motive in Pursuing the Litigation</u>.

24   　　　Courts have found that plaintiffs "repeatedly assert[ing] the same claims in slightly

25   altered guise" have used the courts to hinder the defendants in some manner. <u>Safir</u>, 792 F.2d at

26   24.  The court finds that Krage's motive in filing the cases was to hinder Defendants from

27   enforcing their right to possession of the Property following the foreclosure sale.  Krage

28   improperly filed actions in this court that raised matters that were already adjudicated by the

state court.  Specifically, the State Court Action was dismissed without leave to amend, constituting a decision on the merits and barring a second action on the same facts.  Krage continues to try to relitigate the alleged wrongful foreclosure and eviction proceedings in this court despite the court's dismissal with prejudice of each of the prior adversary proceedings.

Also informative is whether the litigant had an objective, good faith expectation of prevailing.  <u>Safir</u>, 792 F.2d at 24.  From an objective standpoint, Krage could not have had an expectation of prevailing in this case.  This court has dismissed two prior adversary proceedings based on the same facts with prejudice.  Krage could not in good faith have expected a different outcome this time around.   The court finds that Krage's motive in filing this suit is improper.

c.   <u>Whether Krage is Represented by Counsel</u>.

Krage's suits are all brought in pro se.  Generally, courts must give some deference to pro se litigants.  <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam) ("A document filed pro se 'is to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (citation omitted)).  However, a court must not tolerate an abuse of the judicial process so flagrant that it permits one individual to preempt the use of judicial resources that might otherwise be devoted to adjudicating the meritorious claims of other litigants.  <u>See</u> <u>De Long</u>, 912 F.2d at 1148.  That is the case here.

d.   <u>Whether Krage has Caused Unnecessary Expense to the Parties or Placed a Needless Burden on the Courts</u>.

Krage has filed duplicative complaints against the same defendants or their successors without a proper legal basis for doing so and in a manner that imposed needless expense on Defendants.   Krage's actions have forced Defendants to undertake unnecessary expense to defend themselves from baseless claims.  This court has expended considerable time and effort reviewing and ruling on motions seeking dismissal of these claims under Rule 12(b)(6) and relief from Krage's continuing lawsuits.  The court finds that Krage has caused unnecessary expense to the parties and has placed a needless burden on the courts by continually repeating allegations that have already been decided against him.

e.  <u>Whether Other Sanctions Would be Adequate to Protect the Court and Other</u>
<u>Parties</u>.

Based on the evidence, Krage is not likely to stop filing actions against Defendants unless he is appropriately enjoined.  Sanctions would be inadequate in serving to protect the parties and the courts.  Further, it is clear that dismissing Krage's lawsuits does not deter him from bringing more.  Krage shows a lack of respect for the authority of the court's decisions.  Krage has ignored various final judgments in his case, such as orders dismissing his complaint with prejudice.  Considering Krage's history in this regard, Krage is likely to continue his practice of filing lawsuits related to the Property against Defendants.  A judgment against Krage on the merits of this case would be ineffective to stop the abuse.  A pre-filing order is necessary to prevent Krage from harassing Defendants further.

4.  <u>The Order is Narrowly Tailored to the Specific Vice Encountered</u>.

The fourth and final factor in the <u>De Long</u> standard is that the pre-filing order must be narrowly tailored to the vexatious litigant's wrongful behavior.  In <u>De Long</u>, the Ninth Circuit held overbroad an order preventing the plaintiff from filing any suit in a particular district court.  <u>De Long</u>, 912 F.2d at 1148.  In <u>O'Loughlin v. Doe</u>, the Ninth Circuit held that an order requiring a plaintiff to show good cause before making any request to proceed in *forma pauperis* was not narrowly tailored.  <u>O'Loughlin v. Doe</u>, 920 F.2d 614, 618 (9th Cir. 1990).  Likewise, in <u>Moy v.</u> <u>U.S.</u>, the Ninth Circuit held that an order requiring a plaintiff to obtain leave of court to file any suit was overly broad when the plaintiff had only been highly litigious with one group of defendants.  <u>Moy v. U.S.</u>, 906 F.2d 467, 470 (9th Cir. 1990).

In contrast, the Ninth Circuit affirmed an order declaring plaintiff a vexatious litigant in <u>Molski</u>.  There, the district court's order prevented plaintiff from filing actions under Title III of the ADA in the Central District of California.  <u>Molski</u>, 500 F.3d at 1061.  "The order . . . appropriately cover[ed] only the type of claims [plaintiff] had been filing vexatiously—ADA claims."  <u>Id</u>.  The order did not prevent plaintiff from filing any ADA complaints.  <u>Id</u>.  "[I]t merely subject[ed] [plaintiff's] complaints to an initial screening review by a district judge."  <u>Id</u>.  The Ninth Circuit found that the district court's pre-filing order was "narrowly tailored because it

1   [did] not deny [plaintiff] access to courts on any ADA claim that [was] not frivolous, yet it

2   add[ed] a valuable layer of protection, which [the Ninth Circuit thought] was warranted, for the

3   courts and those targeted by[plaintiff's] claims." Id. (citation omitted).

4        In this case, the court finds that Krage is a vexatious litigant and that the proper order

5   must require Krage to obtain leave of court before filing any further complaint seeking relief

6   related to the real property located at 9735 Harvard Avenue, Bellflower, California 90706.

7   B.  Krage Will Not Be Required to Post Security to Continue this Litigation.

8        L.R. 83-8.1 states:

9        It is the policy of the Court to discourage vexatious litigation and to provide persons who
         are subjected to vexatious litigation with security against the costs of defending against
10       such litigation and appropriate orders to control such litigation.  It is the intent of this rule
         to augment the inherent power of the Court to control vexatious litigation and nothing in
11       this rule shall be construed to limit the Court's inherent power in that regard.

12   L.R. 83-8.1[2].  L.R. 83-8.2 further states, in pertinent part:

13

14       On its own motion or on motion of a party, after opportunity to be heard, the Court may,
         at any time, order a party to give security in such amount as the Court determines to be
15       appropriate to secure the payment of any costs, sanctions or other amounts which may be
         awarded against a vexatious litigant, and may make such other orders as are appropriate
16       to control the conduct of a vexatious litigant.  Such orders may include, without
         limitation, a directive to the Clerk not to accept further filings from the litigant without
17       payment of normal filing fees and/or without written authorization from a judge of the
         Court or a Magistrate Judge, issued upon such showing of the evidence supporting the
18       claim as the judge may require.

19   L.R. 83-8.2.  In light of the dismissal of the adversary proceeding at the January 20, 2015

20   hearing, the court finds that security is not necessary.

21

22

23

24

25

26

27   [2] In this court, "[a] matter not specifically covered by these Local Bankruptcy Rules may be
     determined, if possible, by parallel or analogy to the F.R.Civ.P., the FRBP, or the District Court
28   Rules."  LBR 1001-1(e)(1).  Since vexatious litigation in the bankruptcy court is not specifically
     covered by a local bankruptcy rule, the court will apply L.R. 83-8.1 through L.R. 83-8.4.

1

### III. CONCLUSION

2

For the reasons stated the court will grant Defendants' motion to declare Krage a

3

vexatious litigant.  The clerk of this court will be ordered not to accept for filing by or on behalf

4

of Krage any papers that seek relief related to the Property, absent leave of this court.  An order

5

will be entered consistent with this memorandum.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Date: February 10, 2015

Julia W. Brand
United States Bankruptcy Judge

26

27

28